IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAMEER AL ALI, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17 C 04844 |
| ANDREW MARSHALL SAUL, Commissioner of Social Security, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff in this case, Nameer Al Ali, suffers from various medical problems—some physical and some mental. Pursuant to 42 U.S.C. § 405(g), Mr. Al Ali asks this Court to review the Commissioner of Social Security's determination that he is not disabled within the meaning of the Social Security Act. Because the Court finds that the Administrative Law Judge ("ALJ") did not adequately assess Mr. Al Ali's mental impairments, Mr. Al Ali's request for reversal is granted and the Commissioner's cross-motion for summary judgment is denied. The case is remanded to the agency for further proceedings.

BACKGROUND

Mr. Al Ali applied for supplemental security income on January 22, 2014, alleging a disability beginning in 2008. Administrative Record ("AR") 17, ECF No. 5-1. The claim was initially denied on April 4, 2014, and again upon reconsideration on January 15, 2015. *Id.* Mr. Al Ali requested a hearing before an ALJ, which he received. The hearing was held on March 1, 2016 and on May 31, 2016, the ALJ issued an opinion finding that Mr. Al Ali was not disabled. *Id.* at 26. After the Appeals Council declined Mr. Al Ali's request for review—making the ALJ's

decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019)—Mr. Al Ali filed this lawsuit seeking judicial review of the ALJ's decision.

## I. Mr. Al Ali's Relevant Medical History

Mr. Al Ali was born in Iraq in 1953 and moved to Jordan in 1997 before relocating to the United States in 2013. AR 41, ECF No. 5-1. In 2008, while in Jordan, Mr. Al Ali injured his back and has suffered from back pain and pain radiating down his right leg ever since. *Id.* at 19. In the immediate aftermath of his injury, Mr. Al Ali participated in physical therapy but declined to undergo surgery. *Id.* at 47. Since arriving in the United States, Mr. Al Ali has continued to seek medical care for his back. In 2013, his primary care physician, Dr. Shaher, referred him for an MRI, which indicated numerous problems with his spine potentially responsible for his pain. *See id.* at 19, 260 (The MRI showed, among other things, "suspected transitional vertebra at the lumbosacral junction, significant diffuse lower thoracic and lumbar spondylosis with diffuse multilevel degenerative disc disease and mild grade 1 retrolisthesis at L5-S1."). Mr. Al Ali also underwent a DEXA scan—a test used to assess bone density—in early 2014. *Id.* at 21. After his scan, Mr. Al Ali had a follow-up appointment with a spine surgeon, Dr. Daniel Laich, who reviewed Mr. Al Ali's DEXA scan results, which were normal, along with his 2013 MRI. *Id.* at 22, 291. Dr. Laich also conducted a physical examination and found that Mr. Al Ali could walk normally and balance on his heels and toes, that he had full range of motion in his cervical spine but limited range of motion in his lumbar spine, and that he had normal strength, sensation, and dexterity in both legs. *Id.* Dr. Laich diagnosed Mr. Al Ali with degenerative disc disease in his lumbar spine and recommended spinal fusion surgery, but Mr. Al Ali opted not to pursue surgery at that time. *Id.* at 22, 294.

In 2015, Mr. Al Ali continued to experience pain and sought further treatment and

diagnostic testing. First, in February 2015, Mr. Al Ali underwent an MRI of his right hip, which showed no acute abnormalities of the hip joint but did reveal lumbar spine spondylosis. *Id.* at 22, 388. A couple months later, in April 2015, Mr. Al Ali met with Dr. Laich again, reporting an increase in his symptoms—his pain was causing serious difficulty standing, walking, sitting, and lifting/carrying objects, as well as severely limiting his ability to drive and sleep. *Id.* at 22.

Dr. Laich referred Mr. Al Ali to physical therapy as well as to Dr. Sameer Shah for treatment of his ongoing back pain. *Id.* at 391, 397. In May 2015, Dr. Shah examined Mr. Al Ali, noting a right antalgic gait, decreased lumbar flexion and extension, and tenderness to palpitation of the lower back. *Id.* at 22, 398. After reviewing the MRI, Dr. Shah diagnosed Mr. Al Ali with spondylosis, radiculitis, and stenosis and recommended epidural steroid injections at L3-4 and L4-5. *Id.* at 399. A month later, however, Dr. Shah noted that Mr. Al Ali had cancelled his injections due to fear of complications. *Id.* at 23. In lieu of surgery or injections, treatment routes that Mr. Al Ali had elected not to pursue, Dr. Shah referred Mr. Al Ali to pain management and medication management. *Id.*

Mr. Al Ali has also been diagnosed with, and treated for, other ailments—including, as relevant here, generalized anxiety disorder (GAD) and post-traumatic stress disorder (PTSD). In 2014, Mr. Al Ali visited Dr. Josip Pasic on two separate occasions and was diagnosed with GAD and PTSD. *Id.* at 405. Dr. Pasic prescribed Remeron and Ativan in June 2014, but Mr. Al Ali did not find the medication effective. *Id.* at 20, 60.[1] When the medication prescribed by Dr. Pasic did not work, Mr. Al Ali sought out different medication from a family doctor to help him sleep. *Id.*

---

[1] Mr. Al Ali also testified before the ALJ that he saw a psychiatrist named Dr. Sadek on two occasions and prescription records also reflect that Mr. Al Ali was prescribed medications by Dr. Sadek in the fall of 2014. It is not clear how the treatment provided by Dr. Pasic and Dr. Sadek relate substantively or chronologically.

3

at 60. Although Mr. Al Ali has not sought further psychiatric treatment, he continued to discuss his anxiety and difficulty sleeping with his general care provider, Dr. Shaher, who prescribed anti-anxiety medication to help with sleep. *See id.* at 249, 362, 363. Mr. Al Ali also reported difficulty sleeping from bad dreams and difficulty concentrating on and remembering his daily tasks in his communications with the Social Security Administration and in his testimony before the ALJ. *See id.* at 219-220, 60-61.

## II. The Evaluation Process and the ALJ's Decision

A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To determine whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

 1. Is the claimant presently unemployed?

 2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

 3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

 4. Is the claimant unable to perform his or her former occupation?

 5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520. "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

In the present case, the ALJ followed the required five-step sequential process in assessing

Mr. Al Ali's disability claim. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Mr. Al Ali's work as a part-time Lyft driver did not disqualify him and that he had not engaged in substantially gainful activity since January 22, 2014. AR 19. ECF No 5-1. At step two, the ALJ determined: (1) that Mr. Al Ali's degenerative disc disease and obesity constituted severe impairments; (2) that Mr. Al Ali's PTSD and GAD were non-severe impairments. *Id.* at 19-20. At step three, the ALJ determined that Mr. Al Ali did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. *Id.* at 20. The ALJ then assessed Mr. Al Ali's Residual Functional Capacity (RFC)[2] and determined that Mr. Al Ali has the RFC to "perform light work as defined in 20 CFR 416.967(b)" subject to the following limitations: "he can occasionally climb ramps, stairs, ladders, ropes and scaffolds; and can occasionally stoop, kneel, crouch, and crawl." *Id.* At step four, the ALJ determined that Mr. Al Ali could not perform his past work as a "small business owner and imports agent." *Id.* at 25. At step five, however, the ALJ considered Mr. Al Ali's age, education, work experience, and RFC and found that there are "jobs that exist in significant numbers in the national economy that he can perform." *Id.* As a result, the ALJ found that Mr. Al Ali "has not been under a disability, as defined in the Social Security Act, since January 22, 2014, the date the application was filed." *Id.* at 26.

## DISCUSSION

Section 405 of the Social Security Act authorizes judicial review of the Commissioner's final decision regarding a claimant's disability status. *See* 42 U.S.C. § 405(g). But a Court reviewing the Commissioner's final decision may not assess anew whether the claimant is

---

[2] Between step three and step four, the ALJ must assess a claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

5

disabled, nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, the Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In addition to relying on substantial evidence, however, "the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, the ALJ must "identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Mr. Al Ali argues that the ALJ made several reversible errors. After reviewing the record and the parties' briefs, the Court finds that the ALJ erred in failing to properly account for Mr. Al Ali's mental impairments—at step two and again in the RFC assessment. Because the Court remands on this basis, it does not consider Mr. Al Ali's other proffered grounds for reversal.

    Mr. Al Ali first argues that the ALJ failed to use the required "special technique" to evaluate the severity of his mental impairments and improperly assessed those mental impairments as non-severe. The special technique, set forth in 20 C.F.R § 404.1520a, is "used to analyze whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). To determine

whether an impairment is medically determinable, the ALJ evaluates the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1520a(b)(1). If a determinable impairment exists, the ALJ must document that finding and rate the degree of functional limitation in four areas (known as the "B criteria"): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Craft*, 539 F.3d at 674.[3] These ratings "correspond to a determination of severity of the mental impairment." *Id.* at 675. In the present case, the ALJ eschewed both of these steps and simply determined that Mr. Al Ali's PTSD and GAD were non-severe impairments. In making this finding, the ALJ "implicitly found" that they were medically determinable impairments. *See id.* ("The ALJ implicitly found that Craft's dysthymia was a medically determinable impairment but then apparently jumped to the conclusion that the dysthymia was severe without discussing Craft's mental medical history or rating the severity of the four functional areas of limitation.").

In isolation, neither the failure to use the B Criteria to assess severity nor the failure to deem the impairment severe was reversible error. Where a claimant has multiple alleged impairments, only one need be deemed severe to require the ALJ to continue through the sequential evaluation process. *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) ("As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process."). As a result, if an ALJ finds one severe impairment, the finding that another is non-severe "is of no consequence with respect to the outcome of the case." *Id*. at

---

[3] Effective January 17, 2017, the Agency revised the medical criteria for evaluating mental disorders and changed the requirements of listing for mental impairments. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). The Agency noted, however, that it expects federal courts to review its "final decisions using the rules that were in effect at the time [it] issued the decisions." *Id.* at 66138 & n. 1. Because the ALJ issued her decision on May 25, 2016, the Court uses the prior, and then-governing, version of the medical criteria in its review of the ALJ's decision.

927. That was the case here—the ALJ found that Mr. Al Ali's "degenerative disc disease of the lumbar spine with stenosis and obesity" were severe impairments. AR 19, ECF No 5-1.

Where, however, "the ALJ's failure to consider the functional impairments during the special technique analysis [is] compounded by a failure of analysis during the mental RFC determination," the "error requires a remand." *Craft*, 539 F.3d at 675. This is just such a case. When determining a claimant's RFC, an ALJ must "consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). To do so, the ALJ must consider the medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *See* 20 C.F.R. § 404.1545(a)(3); *Craft*, 539 F.3d at 676.

The ALJ's decision, however, did not discuss Mr. Al Ali's medically determinable mental impairments in assessing his RFC or consider the record evidence relevant to those impairments. The lone reference to the impairments comes during the ALJ's discussion of the weight given to Dr. Shaher's opinion that Mr. Al Ali is disabled and cannot perform work or be employed. AR 23, ECF No. 5-1. But this brief mention actually serves to indicate the extent to which the RFC analysis was confined to the limitations stemming from Mr. Al Ali's back issues: in assigning Dr. Shaher's opinion "little weight" the ALJ compares Dr. Shaher's evaluation to the "objective examination findings" indicating that "he is capable of ambulating effectively and he states he can lift/carry up to 20 pounds" but says nothing of evidence regarding his mental impairments. *Id.* In the absence of any analysis of Dr. Shaher's opinion as it relates to the contributory effect of the mental impairments, the Court "has no idea what the ALJ thought about this evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Similarly, in assessing whether Mr. Al Ali's alleged symptoms were supported by the record, the ALJ did not mention or discuss Mr. Al Ali's self-reported

difficulties with concentration, memory, and fatigue stemming from his PTSD and GAD. Instead, the ALJ's discussion is limited to Mr. Al Ali's "allegations of pain." AR at 23, ECF No. 5-1. Although an ALJ need not discuss every individual piece of evidence, she may not ignore an entire line of evidence. *Compare Arnett*, 676 F.3d at 592 (finding reversible error where "[t]he ALJ [ ] failed to take into account several of Arnett's diagnosed physical impairments" and thereby "ignore[d] entire lines of evidence"), *with Jozefyk*, 923 F.3d at 497 (finding no error where "the ALJ credited Jozefyk's testimony and included accommodations for a 'mild mental functional impairment' in the RFC assessment" and did not "discount the less severe impairments entirely").[4] By failing to discuss the evidence related to Mr. Al Ali's mental impairments—namely Mr. Al Ali's diagnosis, his self-reported symptoms, and Dr. Shaher's opinion that the mental impairments contributed to Mr. Al Ali's limitations—the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." *Steele*, 290 F.3d at 941. As a result, the Court cannot "assess the validity of the agency's ultimate findings" and thereby "afford [the] claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In reaching this finding, the Court acknowledges that the record evidence is unlikely to support a finding that Mr. Al Ali's mental impairments, on their own, require a more limited RFC. Importantly, however, that is not the question—if it were, the Court might be able to "say with great confidence" that, on remand, the ALJ would find that they do not, thereby rendering any failure in present analysis harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Rather, the question is whether Mr. Al Ali's mental impairments, in combination with his physical

---

[4] The Commissioner, in opposing Mr. Al Ali's motion, is similarly silent on the issue: although the Commissioner devotes substantial space in his brief to arguing that the non-severe determination was correct, he does not address the failure to consider the impact of the non-severe impairment during the RFC assessment.

impairments, warrant a non-exertional limitation. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [claimant's] impairments was "severe," the ALJ needed to consider the aggregate effect of this entire constellation of ailments–including those impairments that in isolation are not severe."). Because Mr. Al Ali has also alleged limitations in his concentration and pace stemming from his back pain and the ALJ found that Mr. Al Ali's pain was partially supported by the record (though not to the extent alleged), AR 23-24, ECF No. 5-1, Mr. Al Ali's case for a cumulative limitation "is not so weak that [the Court] can deem it frivolous and ignore the grave deficiencies in the administrative law judge's opinion on the grounds of harmless error." *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010). As a result, as the Court in *Craft* noted, the failure to assess possible functional limitations stemming from Mr. Al Ali's mental impairments at step two and, again, in the RFC assessment "requires a remand." 539 F.3d at 675. On remand, the ALJ is directed to perform a step two analysis of Mr. Al Ali's mental impairments and reevaluate Mr. Al Ali's RFC.

\* \* \* \* \*

For the reasons stated above, Mr. Al Ali's request for reversal is granted and the Commissioner's cross-motion for summary judgment is denied. The case is remanded to the agency for further proceedings consistent with this opinion.

Date: July 27, 2020

John J. Tharp, Jr.
United States District Judge

10